70 Cal.App.2d 205 (1945)
H. A. GEISENDORFER, Respondent,
v.
RAINBOW MILL AND LUMBER COMPANY (a Corporation), Appellant.
Civ. No. 7155. 
California Court of Appeals. Third Dist. 
Sept. 5, 1945.
 C.J. Luttrell, J. Everett Barr and Carlton & Shadwell for Appellant.
 Roy A. Weaver for Respondent.
 THOMPSON, J.
 This is a suit instituted by a minority stockholder of the defendant Rainbow Mill and Lumber Company, a corporation, under section 404 (B) (1) of the Civil Code, to procure the involuntary dissolution of the corporation on the ground that it had "abandoned its business for more than one year." The judgment was rendered in the alternative, pursuant to subdivision (E) of that section as amended in 1941. It provides that unless the holders of 50 per cent of the outstanding shares of stock vote to purchase stock belonging to plaintiff at a fair cash value thereof, and notify him to that effect within ten days from the entry and notice of judgment, the corporation shall become dissolved. No such notice of proposed purchase of stock was served. The decree of dissolution became effective. From that judgment the defendant has appealed.
 It is urged that the findings and judgment are not supported by the evidence for the chief reasons that it does not appear the corporation abandoned its business for more than a year prior to the commencement of the action, or that it mismanaged *707 its business, and that the court erred in receiving oral evidence to vary the terms of the charter.
 In the sixth finding of fact the court determined:
 "That the defendant corporation had abandoned its business for more than one year prior to the filing plaintiff's complaint for dissolution in this action; that no Corporate meetings of the stockholders or directors of said Corporation had been held for more than one (1) year prior to the filing of said complaint; that all of the physical assets of said Company have been sold; that all of the operating assets of said Company used in the operation of its sawmill and lumbering business were sold by said Company in the year 1921, and said Company has not since said date engaged in the lumber manufacturing or sawmill business; that the defendant Corporation has not engaged in any business for more than one (1) year prior to the filing of plaintiff's complaint."
 In the ninth finding of fact the court further determined:
 "That those in control of the Corporation have been guilty of persistent abuse of authority and unfairness toward the plaintiff and have used their control of said Corporation for purposes personal to the majority stockholders and without benefit but to the contrary thereof to the detriment of the plaintiff and said Corporation."
 [1] We are of the opinion the findings and judgment are adequately supported by the evidence. The defendant is a California corporation organized prior to 1921, primarily to operate a logging and lumber business, with its principal place of business in Siskiyou County. For a number of years the defendant did actively conduct a lumber and logging business. There were 40,000 shares of capital stock issued and outstanding. At, and for some time prior to the commencement of this action, the plaintiff owned 11,561.81 shares, which was one-third of the outstanding stock. There is some evidence that the stock was worth about $35 per share. There were 8,375 shares held as treasury stock. Frank, Joe and Tom Ball, who are members of the same family, owned and controlled more than 50 per cent of the stock. Frank Ball was the president of the corporation. In November, 1921, the "Mill Plant" was sold for $18,000. About the same time the "Logging Equipment" was sold to Pioneer Box Company, another corporation, for $16,500, in which company Frank Ball owned a one-ninth interest. Since the last-mentioned sales of the *708 equipment, assets and property of the defendant corporation, it did not engage in further logging or lumber business.
 The Pioneer Box Company was succeeded in 1928 by the Mt. Shasta Pine Manufacturing Company, which assumed its indebtedness to Rainbow Mill and Lumber Company for the milling equipment purchased. The Mt. Shasta Company issued and delivered to the defendant corporation 401 shares of its capital stock in payment of that debt. That stock is still held by the defendant. No dividends have been declared or paid upon defendant's stock since 1937. That Mt. Shasta stock is the only property held by the defendant. It is not contended the defendant corporation has engaged in or operated a logging or lumber business since it disposed of its milling plant, equipment and property prior to 1928.
 The board of directors of the defendant corporation passed a resolution after the sale of its property, directing the procuring of dissolution of the corporation. The president, Mr. Frank Ball, failed and refused to proceed to procure a dissolution because, as he testified, "I believe to dissolve the Rainbow Corporation would have a bad effect on the value of this [Mt. Shasta Company] stock held by Rainbow." He said he considered the Rainbow Mill and Lumber Company was engaged in doing business for which it was incorporated because it was holding the 401 shares of Mt. Shasta Pine Manufacturing Company upon which "It has been keeping a watchful eye on this business that they own stock in." It is conceded that no stockholders' meeting of the defendant corporation has been held since 1937. It has not pretended to carry on or operate a logging or lumber business since 1928.
 [2] The important issue on this appeal is the question of whether a lumber corporation which has abandoned its primary purpose of incorporation for a long period of time may be considered as maintaining its lumber business merely because it owns stock in another corporation. We think that question must be answered in the negative. The authorized business of a corporation must be determined primarily from the provisions of its charter or articles of incorporation. (Silveira v. Associated Milk Producers, 63 Cal.App. 572 [219 P. 461]; 6A Cal.Jur. 60, p. 143.) The first article of the defendant's charter clearly indicates that the purpose of the corporation was to conduct a logging and lumber manufacturing business. It reads: *709
 "1. To carry on the business of lumber manufacturing in all its branches, and for the purpose to acquire by purchase or otherwise, and to operate, logging camps and equipment; to log timber lands for itself or others under contract or otherwise; to purchase, construct, or otherwise acquire, and to operate, sawmills, planing mills, and any or all kinds of factories for lumber and woodworking; and generally to do all things necessary or convenient for the complete operation of a lumber manufacturing business."
 Incidental to the operation and maintenance of a lumber and logging business, article six of the charter authorizes the corporation:
 "To subscribe for, purchase, or otherwise acquire, and hold with the same rights of ownership therein, including the right to vote the same, as may be permitted to natural persons, the shares, bonds and obligations of any corporation organized under the laws of any state, ..."
 Clearly the last quoted article did not constitute the defendant a "holding corporation" authorizing it to carry on the business or traffic in buying and selling stocks and bonds as an occupation separate and distinct from its primary business of logging and manufacturing lumber products. The Mt. Shasta Pine Manufacturing Company, in which the defendant held 401 shares of stock, was not a subsidiary corporation of the Rainbow Mill and Lumber Company. (Civ. Code, 278; People v. Alexander Goldstein Co., 66 Cal.App.2d 771, 774 [152 P.2d 1016].) It has been held a corporation which is organized for the chief purpose of conducting a specified mercantile or manufacturing business, with the incidental right to acquire or hold notes, stocks, bonds, or other evidences of indebtedness, may not be deemed to be "doing business" merely because it holds such stock or maintains a suit to collect indebtedness due to it, after the business property has been sold and the maintenance of the business has been abandoned for years. (Van Oss v. Premier Petroleum Co., 113 Me. 180 [93 A. 72]; People ex rel. Butterick Co. v. Gilchrist, 213 App.Div. 533 [211 N.Y.S. 75, 77]; Rose v. Nunnally Inv. Co., 22 F.2d 102; Chile Copper Co. v. Edwards, 294 F. 581; Three Forks Coal Co. v. United States, 9 F.2d 946; 13 W. & Ph. (perm. ed.), p. 194.)
 [3] Conceding, without so deciding, that the articles must necessarily determine the purpose for which the corporation *710 was organized and authorized to do business, and that oral evidence is incompetent by means of which to vary the terms of the charter, we are of the opinion the court did not err in the admission of evidence tending to vary the terms of the charter. The challenged evidence was offered for the purpose of determining what business, if any, the corporation engaged in during the fifteen years which had elapsed after its lumbering equipment and mill property had been sold. Objections were made to plaintiff's question propounded to Mr. Ball, the president of the corporation, as follows:
 "Q. Mr. Ball, isn't it true that the Rainbow Corporation is not engaged in the lumber business at all since the transfers were made as shown by the minutes we were just discussing?"
 The preceding question was followed by the inquiry:
 "Q. Is it your opinion ... Mr. Ball, that the Rainbow Corporation was in the lumber business by reason of being a stockholder in another lumber company? ... A. Yes, I think so."
 It will be observed those questions do not call for evidence to vary the terms of the charter. On the contrary, they sought to elicit an admission that the corporation had not engaged in "the lumber business" since it disposed of its logging and lumber equipment and property. That seemed to be a conceded fact, for the president, Mr. Ball, explained that he assumed the corporation had not abandoned its lumber and logging business, in spite of its disposal of all other property, because it still held 401 shares of stock "in another lumber company." The foregoing questions were merely propounded to ascertain what activities the corporation had engaged in so as to determine by an independent construction of the charter whether it had abandoned for more than one year the business it was authorized by its charter to perform. The rulings of the court in that regard were not erroneous.
 In view of what we have previously said, it is unnecessary to determine whether there is sufficient evidence to support the findings that the directors of the corporation mismanaged the business.
 The judgment for dissolution and liquidation of the corporation appears to have been justified by ample proof that it is for the necessary protection and best interest of a minority *711 stockholder who owns one-third of the capital stock of the corporation. We find no reversible error in the record.
 The judgment is affirmed.
 Adams, P. J., and Peek, J., concurred.